APPEAL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–00412–RC</u>
### *Internal Use Only*

HARRIS v. BESSENT et al
Assigned to: Judge Rudolph Contreras
Cause: 28:1331 Fed. Question

Date Filed: 02/11/2025
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**CATHY A. HARRIS**
*in her personal capacity and in her*
*official capacity as Member of the Merit*
*Systems Protection Board*

represented by **Michael J. Kator**
KATOR, PARKS, WEISER & WEIGHT,
PLLC
1150 Connecticut Ave., NW
Suite 705
Washington, DC 20036
202–898–4800
Fax: 202–289–1389
Email: mkator@katorparks.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeremy D. Wright**
KATOR, PARKS, WEISER & WRIGHT
PLLC
1150 Connecticut Ave NW
Ste 705
Washington, DC 20036
202–898–4800
Fax: 202–289–1389
Email: jwright@katorparks.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Linda Marie Correia**
CORREIA & PUTH, PLLC
1400 16th Street, NW
Suite 450
Washington, DC 20036
(202) 602–6500
Fax: (202) 602–6501
Email: lcorreia@correiaputh.com
*ATTORNEY TO BE NOTICED*

**Kerrie Diane Riggs**
KATOR, PARKS, WEISER & HARRIS,
PLLC

1150 Connecticut Ave, N.W.
Suite 705
Washington, DC 20036
202–898–4800
Fax: 202–289–1389
Email: kriggs@katorparks.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**SCOTT BESSENT**
*in his official capacity as Secretary of the*
*Treasury*

represented by **Madeline McMahon**
DOJ–CIV
1100 L Street NW
Washington, DC 20005
(202) 451–7722
Fax: (202) 616–8470
Email: madeline.m.mcmahon@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**TRENT MORSE**
*in his official capacity as Deputy*
*Assistant to the President and Deputy*
*Director of the White House Presidential*
*Personnel Office*

represented by **Madeline McMahon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SERGIO GOR**
*in his official capacity as Director of the*
*White House Presidential Personnel*
*Office*

represented by **Madeline McMahon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HENRY J. KERNER**
*in his official capacity as Acting*
*Chairman of the Merit Systems*
*Protection Board*

represented by **Madeline McMahon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DONALD J. TRUMP**
*in his official capacity as President of the*
*United States of America*

represented by **Madeline McMahon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**RUSSELL T. VOUGHT**
*in his official capacity as Director of the*

represented by **Madeline McMahon**
(See above for address)

*Office of Management and Budget*                    *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/11/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC–11473515) filed by CATHY A. HARRIS. (Attachments: # 1 Exhibit Exhibit A, # 2 Civil Cover Sheet Civil Cover Sheet, # 3 Summons Summons for Attorney General, # 4 Summons Summons for Scott Bessent, # 5 Summons Summons for Sergio Gor, # 6 Summons Summons for Henry Kerner, # 7 Summons Summons for Trent Morse, # 8 Summons Summons for Donald Trump, # 9 Summons Summons for USAO, # 10 Summons Summons for Vought)(Kator, Michael) Modified attorney on 2/12/2025 (znmw). (Entered: 02/11/2025) |
| 02/11/2025 | 2 | Emergency MOTION for Temporary Restraining Order by CATHY A. HARRIS. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit A, # 3 Compliance Report, # 4 Text of Proposed Order)(Riggs, Kerrie) (Entered: 02/11/2025) |
| 02/11/2025 | 3 | NOTICE of Appearance by Linda Marie Correia on behalf of CATHY A. HARRIS (Correia, Linda) (Entered: 02/11/2025) |
| 02/12/2025 | | Case Assigned to Judge Rudolph Contreras. (znmw) (Entered: 02/12/2025) |
| 02/12/2025 | 4 | SUMMONS (8) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 02/12/2025) |
| 02/12/2025 | | NOTICE OF ERROR regarding 2 Emergency MOTION for Temporary Restraining Order , 1 Complaint. Please note the following error for future filings: Invalid attorney signature– signature on document must match PACER login. Do not refile; future non–compliant documents may be entered in error. (znmw) (Entered: 02/12/2025) |
| 02/12/2025 | | MINUTE ORDER: Upon consideration of 2 Plaintiff's Motion for Temporary Restraining Order, it is hereby ORDERED that the parties shall appear for a hearing on the matter on February 13, 2025, at 3:00 p.m. in Courtroom 23A. It is FURTHER ORDERED that Plaintiff shall serve Defendants with a copy of this order immediately upon receipt. SO ORDERED. Signed by Judge Rudolph Contreras on 2/12/2025. (lcrc3) (Entered: 02/12/2025) |
| 02/12/2025 | | Set/Reset Hearings: Motion Hearing set for 2/13/2025 at 03:00 PM in Courtroom 23A– In Person before Judge Rudolph Contreras. (tj) (Entered: 02/12/2025) |
| 02/13/2025 | 5 | NOTICE of Appearance by Madeline McMahon on behalf of All Defendants (McMahon, Madeline) (Entered: 02/13/2025) |
| 02/13/2025 | 6 | Memorandum in opposition to re 2 Motion for TRO filed by SCOTT BESSENT, TRENT MORSE, SERGIO GOR, HENRY J. KERNER, DONALD J. TRUMP, RUSSELL T. VOUGHT. (McMahon, Madeline) (Entered: 02/13/2025) |
| 02/13/2025 | | NOTICE: The Court will provide public access to the motion hearing in this matter now scheduled for 2/13/2025 at 3:00pm before the Hon. Rudolph Contreras. Members of the public shall adhere to the rules set forth on the Court's website. Toll Free Number: (833) 990–9400; Meeting ID 698780857. (tj) (Entered: 02/13/2025) |
| 02/13/2025 | | Minute Entry for proceedings held before Judge Rudolph Contreras: Motion Hearing held on 2/13/2025 re 2 Emergency MOTION for Temporary Restraining Order filed by |

3

| | | |
|---|---|---|
| | | plaintiff CATHY A. HARRIS. Oral argument heard, and plaintiff shall file a reply to the government's opposition by 2/14/2025. The court takes the motion under advisement. (Court Reporter: Tim Miller) (tj) (Entered: 02/13/2025) |
| 02/14/2025 | 7 | REPLY to opposition to motion re 2 Motion for TRO filed by CATHY A. HARRIS. (Attachments: # 1 Exhibit Exhibit B)(Riggs, Kerrie) (Entered: 02/14/2025) |
| 02/18/2025 | 8 | ORDER granting 2 Motion for Temporary Restraining Order. See document for details. Signed by Judge Rudolph Contreras on 2/18/2025. (lcrc3) (Entered: 02/18/2025) |
| 02/18/2025 | 9 | MEMORANDUM OPINION granting 2 Motion for Temporary Restraining Order. See document for details. Signed by Judge Rudolph Contreras on 2/18/2025. (lcrc3) (Entered: 02/18/2025) |
| 02/18/2025 | 10 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jeremy Wright, Filing fee $ 100, receipt number ADCDC–11486595. Fee Status: Fee Paid. by CATHY A. HARRIS. (Attachments: # 1 Declaration Declaration of J.Wright, # 2 Text of Proposed Order Proposed Order)(Riggs, Kerrie) (Entered: 02/18/2025) |
| 02/18/2025 | | NOTICE OF ERROR regarding 10 Motion for Leave to Appear Pro Hac Vice: Attorney Name– Jeremy Wright. The following error(s) need correction: Pro Hac Vice motion must be accompanied by a Certificate of Good Standing issued within the last 30 days (LCvR 83.2(c)(2)). Please file certificate as an Errata. (lcrc3) (Entered: 02/18/2025) |
| 02/18/2025 | 11 | ERRATA *Submission of Certificate of Good Standing* by CATHY A. HARRIS re 10 Motion for Leave to Appear Pro Hac Vice,. (Riggs, Kerrie) (Entered: 02/18/2025) |
| 02/19/2025 | | MINUTE ORDER granting 10 Motion for Leave to Appear *Pro Hac Vice*: Pursuant to Local Civil Rule 83.2, it is hereby ORDERED that Jeremy D. Wright is admitted to represent Plaintiff Cathy A. Harris *pro hac vice* in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to Local Civil Rule 83.6(a). Click for instructions**. SO ORDERED. Signed by Judge Rudolph Contreras on 2/19/2025. (lcrc3) (Entered: 02/19/2025) |
| 02/19/2025 | 12 | NOTICE of Appearance by Jeremy D. Wright on behalf of All Plaintiffs (Wright, Jeremy) (Entered: 02/19/2025) |
| 02/19/2025 | | Set/Reset Deadlines/Hearings: Motions due by 2/23/2025. Responses due by 2/28/2025 Replies due by 3/2/2025. Status Report due by 2/19/2025 Motion Hearing set for 3/3/2025 at 02:00 PM in Courtroom 23A– In Person before Judge Rudolph Contreras. (tj) (Entered: 02/19/2025) |
| 02/19/2025 | 13 | Joint STATUS REPORT by CATHY A. HARRIS, SCOTT BESSENT, TRENT MORSE, SERGIO GOR, HENRY J. KERNER, DONALD J. TRUMP, RUSSELL T. VOUGHT. (Wright, Jeremy) (Entered: 02/19/2025) |
| 02/20/2025 | 14 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 8 Order on Motion for TRO by SCOTT BESSENT, TRENT MORSE, SERGIO GOR, HENRY J. KERNER, DONALD J. TRUMP, RUSSELL T. VOUGHT. Fee Status: No Fee Paid. Parties have been notified. (McMahon, Madeline) Modified event on 2/20/2025 (mg). (Entered: 02/20/2025) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHY A. HARRIS, | |
| *Plaintiff,* | |
| *v.* | Civil Action No. 1:25-cv-00412-RC |
| SCOTT BESSENT, *et al.,* | |
| *Defendants.* | |

## DEFENDANTS' NOTICE OF APPEAL

PLEASE TAKE NOTICE that Defendants hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from this Court's Memorandum Opinion and Order granting Plaintiff's Motion for a Temporary Restraining Order. *See* ECF Nos. 8, 9.

Dated: February 20, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Principal Deputy Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

*/s/ Madeline M. McMahon*
MADELINE M. MCMAHON
(DC Bar No. 1720813)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*

1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CATHY A. HARRIS, *in her personal capacity and in her official capacity as Member of the Merit Systems Protection Board*, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-412 (RC) |
| | : | | |
| v. | : | Re Document No.: | 2 |
| | : | | |
| SCOTT BESSENT, *in his official capacity as Secretary of the Treasury*, et al., | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

### Granting Plaintiff's Motion for Temporary Restraining Order

## I.  INTRODUCTION

Plaintiff Cathy A. Harris was appointed to the Merit Systems Protection Board ("MSPB") on June 1, 2022, to a term set to expire on March 1, 2028.  Federal law states that members of the Merit Systems Protection Board may be removed from office "only for inefficiency, neglect of duty, or malfeasance in office."  On February 10, 2025, President Donald J. Trump informed Harris that her position on the MSPB was "terminated, effective immediately" but provided no reason for Harris's termination.  The following day, Harris filed this lawsuit against President Trump and several other federal officials ("Defendants"), claiming that her termination violated federal law.  She moves for a temporary restraining order declaring her removal from office to be unlawful, declaring that she remains a member of the MSPB, and enjoining Defendants from treating her as having been removed.  For the following reasons, the Court grants that motion while the parties fully brief a motion for a preliminary injunction.

## II.  BACKGROUND

### A.  Statutory Background

Congress created the Merit Systems Protection Board as a component of the Civil Service Reform Act of 1978, which "establishes a framework for evaluating personnel actions taken against federal employees."  *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012); *see also* Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, § 202, 92 Stat. 1111, 1121–25 (1978) (codified at 5 U.S.C. §§ 1201–05).  Congress's Findings and Statement of Purpose indicate that "[i]t is the policy of the United States that . . . to provide the people of the United States with a competent, honest, and productive Federal work force[,] . . . Federal personnel management should be implemented consistent with merit system principles."  CSRA § 3, 92 Stat. at 1112. Those merit system principles include, among others, "[r]ecruitment . . . from qualified individuals" where "selection and advancement [is] determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity."  *Id.* § 101, 92 Stat. at 1113 (codified at 5 U.S.C. § 2301).  Congress additionally instructed that "[e]mployees should be . . . protected against arbitrary action, personal favoritism, or coercion for partisan political purposes," as well as "against reprisal for the lawful disclosure of information which the employees reasonably believe evidences," among other things, violations of law, gross waste of funds, an abuse of authority, or substantial and specific dangers to public health or safety.  *Id.*

The CSRA established the MSPB as "an independent agency consisting of three members" and "charged [it] with protecting the merit system principles and adjudicating conflicts between federal workers and their employing agencies."  *Frazier v. Merit Sys. Prot. Bd.*, 672 F.2d 150, 154 (D.C. Cir. 1982); *see also* CSRA § 101, 92 Stat. at 1114–17 (codified at 5

U.S.C. § 2302) (establishing prohibited personnel practices, such as employment discrimination, unlawful political activities, and any other violations of law within the federal civil service).  The Board reviews federal employee appeals of adverse actions "which [are] appealable to the Board under any law, rule, or regulation," including those related to removal or suspension for periods greater than fourteen days.  5 U.S.C. § 7701(a); *see also id.* § 1204(a)(1).  It may order federal agencies and employees to comply with its decisions and conduct studies "relating to the civil service" for the President and Congress.  5 U.S.C. § 1204(a)(2), (a)(3).  The MSPB also reviews "rules and regulations of the Office of Personnel Management."  *Id.* § 1204(a)(4).  The MSPB's final decisions are generally subject to judicial review.  *See id.* § 7703.

Members of the MSPB are "appointed by the President, by and with the advice and consent of the Senate," and "not more than 2 of [the members] may be adherents of the same political party."  CSRA § 202 (codified at 5 U.S.C. § 1201).  Members of the MSPB are appointed to seven-year terms that may be extended by up to one year if a successor has not yet been appointed.  *Id.* (codified at 5 U.S.C. § 1202(a)–(c)).  "Any member may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office."  *Id.* (codified at 5 U.S.C. § 1202(d)).

### B.  Factual Background

President Joseph R. Biden initially nominated Harris to be a member of the MSPB on June 24, 2021, and renominated her on January 4, 2022.  Compl. ¶ 24, ECF No. 1.  The Senate confirmed Harris on May 25, 2022, and she was sworn in on June 1, 2022.  *Id.*  Her term expires on March 1, 2028.  *Id.*  The Senate later confirmed Harris as Chairman, and she was sworn in as Chairman on March 14, 2024.  *Id.* ¶ 25.

On February 10, 2025, Harris received an email from Trent Morse, Deputy Assistant to the President and the Deputy Director of the White House Presidential Personnel Office, which stated in its entirety:

> On behalf of President Donald J. Trump, I am writing to inform you that your position on the Merit Systems Protection Board is terminated, effective immediately. Thank you for your service[.]

Ex. A to Compl., ECF No. 1-1; *see also* Ex. A to Pl.'s Mot. for TRO, ECF No. 2-2.  The communication does not explain the basis for Harris's termination.

Harris filed this lawsuit on February 11, 2025, claiming that her firing was *ultra vires*, unconstitutional, and a violation of the Administrative Procedure Act.  *See* Compl. ¶¶ 31–37, 40–41.  She seeks relief under the Declaratory Judgment Act, issuance of a writ of mandamus, and equitable relief.  *See id.* ¶¶ 38–39, 42–46.  Harris additionally filed a motion for a temporary restraining order, *see* Pl.'s Mot. for TRO, ECF No. 2, which Defendants oppose, *see* Defs.' Opp'n to Mot. for TRO ("Defs.' Opp'n"), ECF No. 6.  On February 13, 2025, the Court held a hearing on the TRO motion.

### III.  LEGAL STANDARD

"The purpose of a temporary restraining order is to preserve the status quo for a limited period of time until the Court has the opportunity to pass on the merits of the demand for a preliminary injunction."  *Barrow v. Graham*, 124 F. Supp. 2d 714, 715–16 (D.D.C. 2000) (citing *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989)).  "An application for a TRO is analyzed using the same factors applicable to a request for preliminary injunctive relief."  *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 678 F. Supp. 3d 88, 99 (D.D.C. 2023) (citing *Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011)).

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'"  *John Doe Co. v. Consumer Fin. Prot.*

*Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "The last two factors 'merge when the Government is the opposing party.'" *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "Of course, the movant carries the burden of persua[ding]" the Court that these factors merit preliminary relief, *Fla. EB5 Invs., LLC v. Wolf*, 443 F. Supp. 3d 7, 11 (D.D.C. 2020) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)), and must do so by making a "clear showing," *Cobell*, 391 F.3d at 258. A district court must generally consider and balance each of these factors in deciding whether to issue a preliminary injunction. *See Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011). "A preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits." *Cobell*, 391 F.3d at 261.

## IV.  ANALYSIS

The Court concludes that Harris has established a strong likelihood of success on the merits, that irreparable harm is likely to occur in the absence of injunctive relief, and that the public interest weighs in favor of enjoining Defendants' actions. Harris has thus carried her burden to establish that a temporary restraining order is warranted here.

### A.  Likelihood of Success on the Merits

Harris argues that she is likely to prevail on the merits of her claims based on Supreme Court precedent and the nature of the MSPB's powers. *See* Mem. in Supp. of Pl.'s Mot. for TRO

("Pl.'s Mot."), ECF No. 2-1. Specifically, she argues that *Humphrey's Executor v. United States* and its progeny confirm the constitutionality of the conditions placed on removal of MSPB members. 295 U.S. 602 (1935); *see also* Pl.'s Mot. at 5–6. She additionally cites the MSPB's limited authority, quasi-legislative functions, need for independence, and accountability to Congress and the President as reasons for the constitutionality of members' appointment for a term of years with specific conditions for removal. *See* Pl.'s Mot. at 8–10. Defendants argue that *Humphrey's Executor* does not apply because the MSPB exercises executive power—it may issue orders to federal employees, adjudicate and take final action, and litigate on its own behalf. *See* Defs.' Opp'n at 7. The Court concludes that Harris has demonstrated a likelihood of success on the merits.

   *Humphrey's Executor* appears to dictate the outcome of this case. The Federal Trade Commission ("FTC") comprises five members "appointed by the President, by and with the advice and consent of the Senate," and "[n]ot more than three of the commissioners shall be members of the same political party." *Humphrey's Executor*, 295 U.S. at 619–20 (quoting 15 U.S.C. § 41). "Any Commissioner may be removed by the President for inefficiency, neglect of duty, or malfeasance in office." *Id.* (quoting 15 U.S.C. § 41). In *Humphrey's Executor*, President Hoover had appointed William Humphrey as a member of the Federal Trade Commission, which carried a term of seven years. 295 U.S. at 612. Less than two years later, President Roosevelt terminated Humphrey over differences of political opinion, stating, "[e]ffective as of this date you are hereby removed from the office of Commissioner of the Federal Trade Commission." *Id.* at 619. Humphry died several months later, but his estate sued to recover backpay on the basis that his removal was unlawful. *Id.* at 612.

The Supreme Court confirmed that President Roosevelt's termination of Humphry was indeed unlawful. The Court observed that "[t]he statute fixes a term of office, in accordance with many precedents." *Id.* at 623. The Court further explained:

> The commission is to be nonpartisan; and it must, from the very nature of its duties, act with entire impartiality. It is charged with the enforcement of no policy except the policy of the law. Its duties are neither political nor executive, but predominantly quasi judicial and quasi legislative. Like the Interstate Commerce Commission, its members are called upon to exercise the trained judgment of a body of experts "appointed by law and informed by experience."

*Id.* at 624. The Court differentiated FTC members from the postmaster in *Myers v. United States*, 272 U.S. 52 (1926) (evaluating statute stating that postmasters "shall hold their offices for four years unless sooner removed or suspended according to law"). "A postmaster is an executive officer restricted to the performance of executive functions" and is "charged with no duty at all related to either the legislative or judicial power." *Id.* at 627. The FTC, in contrast, "acts in part quasi legislatively and in part quasi judicially" rather than exercising traditional executive powers. *Id.* at 629. "We think it plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers of the character of those just named," the Court concluded. *Id.*

Two decades later, the Court considered President Eisenhower's removal of a member of the War Claims Commission, whom President Truman had appointed and the Senate had confirmed. *See Wiener v. United States*, 357 U.S. 349, 350 (1958). Congress charged that commission with processing "claims for compensating internees, prisoners of war, and religious organizations . . . who suffered personal injury or property damage at the hands of the enemy in connection with World War II," and the commissioners' terms were limited by the short duration of the commission's existence. *Id.* The Court reasoned that Congress intended to "preclude[] the President from influencing the Commission in passing on a particular claim," which meant

that the President naturally could not "hang . . . the Damocles' sword of removal" over the commissioners.  *Id.* at 356.  The Court reaffirmed that the President had "no such power" to "remove a member of an adjudicatory body like the War Claims Commission merely because he wanted his own appointees on such a Commission."  *Id.*[1]

The Supreme Court recently recognized the constitutionality of this narrow restriction on the President's removal power in *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 215 (2020).  *Humprey's Executor*, the Court explained, "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power."  *Id.* at 216; *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010) (summarizing *Humphrey's Executor* as holding that "Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause.").

This case appears to be on all fours with *Humphrey's Executor*.  The MSPB is "a multimember body of experts" that is "balanced along partisan lines."  *Seila Law*, 591 U.S. at 215.  The President will therefore likely have the "opportunity to shape its leadership and thereby

---

[1] The Court once again considered a multi-member body in *Mistretta v. United States* when passing on the constitutionality of the United States Sentencing Commission, which formally resides in the Judiciary.  488 U.S. 361 (1989).  The Sentencing Report Act of 1984 empowered the President to appoint commissioners to the Sentencing Commission, with members "subject to removal by the President 'only for neglect of duty or malfeasance in office or for other good cause shown.'"  *Id.* at 368 (quoting 28 U.S.C. § 991(a)).  When considering whether the Act affords the President undue influence over federal judges who served as commissioners, the Court recognized that "the President's removal power under the Act is limited."  *Id.* at 410.  "Such congressional limitation on the President's removal power, like the removal provisions upheld in *Morrison v. Olson*, 487 U.S. 654 (1988), and *Humphrey's Executor* . . . , is specifically crafted to prevent the President from exercising 'coercive influence' over independent agencies."  *Id.*

influence its activities." *Id.* at 225.  The CSRA envisions that the Board "is to be nonpartisan; and it must, from the very nature of its duties, act with entire impartiality."  *Humphrey's Executor*, 295 U.S. at 624.  The CSRA also "fixes a term of office."  *Id.* at 623.  The MSPB's duties are "quasi judicial," *id.* at 624, in that it conducts preliminary adjudication of federal employees' claims, which may then be appealed to the Federal Circuit.  *See* 5 U.S.C. §§ 1204(a)(1), 7703.  Although the MSPB lacks its own rulemaking authority, Congress intended the agency to aid its legislative goals by regularly transmitting reports to Congress regarding the Board's functions.  *See* 5 U.S.C. §§ 1204(l), 1205.  It is additionally evident that Congress hoped to "preclude[] the President from influencing the [Board] in passing on a particular claim." *Wiener*, 357 U.S. at 356.

The MSPB additionally regulates government activity rather than that of private parties, limiting the risk that its members can represent any "special threat to individual liberty."  *Seila Law*, 591 U.S. at 223; *see also* Pl.'s Mot. at 8 (emphasizing that "the MSPB does not regulate or penalize private activity").  Instead, the MSPB primarily enforces merit system principles within the federal government and responds to prohibited personnel practices, such as employment discrimination and retaliation against whistleblowers.  *See* 5 U.S.C. § 2302(b).  This authority is fundamentally narrower than that of the FTC, which regulates private conduct.  *See* 15 U.S.C. § 45a–55 (defining scope of trade practices regulated by the FTC); *id.* § 45 (empowering FTC to regulate commerce); *see also Dellinger v. Bessent*, No. 25-cv-0385, 2025 WL 471022, at *8 (D.D.C. Feb. 12, 2025), *aff'd*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (per curiam) (explaining that the Office of Special Counsel "is not an agency endowed with the power to articulate, implement, or enforce policy that affects a broad swath of the American public or its economy"). The Board also remains politically accountable to Congress and the President through the

appropriations process in a manner inapplicable to independent agencies with their own funding sources. *See Selia Law*, 591 U.S. at 226 (discussing Consumer Financial Protection Bureau's "receipt of funds outside the appropriations process"); *Collins v. Yellen*, 594 U.S. 220, 231 (2021) (observing that "the [Federal Housing Finance Agency] is not funded through the ordinary appropriations process").

Finally, the MSPB's mission and purpose require independence. *See* Pl.'s Mot. at 9–10. In enacting the CSRA, Congress exercised its power to regulate the civil service. *See U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 555 (1973) ("Congress and the President are responsible for an efficient public service." (quoting *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 99 (1947))). It defined certain prohibited personnel practices, to include discrimination, loyalty oaths, coercion to engage in political activity, and retaliation against whistleblowers. *See* 5 U.S.C. § 2302(b)(1)–(3), (8). Direct political control over the MSPB would have limited effect on the President's implementation of his policy agenda. It would instead neuter the CSRA's statutory scheme by allowing high-ranking government officials to engage in prohibited practices and then pressure the MSPB into inaction. The MSPB's independence is therefore structurally inseparable from the CSRA itself.[2]

Because the MSPB falls within the scope of *Humphrey's Executor*, Congress has the power to specify that members of the MSPB may serve for a term of years, with the President empowered to remove those members only for inefficiency, neglect of duty, or malfeasance in office. The President did not indicate that any of these reasons drove his decision to terminate

---

[2] Furthermore, the MSPB's duties dovetail with *United States v. Perkins*, in which the Supreme Court held that Congress may place some limitations on the removal of inferior officers. 116 U.S. 483, 485 (1886). Denying independence to the Board would undermine these constitutionally sound limitations on the removal of civil servants.

Harris.  The Court thus concludes that Harris has demonstrated that she is likely to show her termination as a member of the MSPB was unlawful.[3]

### B.  Irreparable Harm

Harris asserts that she will suffer irreparable harm because, absent interim relief, she will be deprived of her "statutory right to function" as a senior government official.  Pl.'s Mot. at 10 (quoting *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) (per curiam)).  She additionally contends that the injury will be irreparable because her claim to MSPB membership may be frustrated by the appointment of a successor.  *Id.* at 11.  She also argues that denial of emergency relief and confusion about the status of the MSPB may "deprive Plaintiff and the MSPB of the 'ability to fulfill [their] mandate' to federal employees."  *Id.* (quoting *Berry*, 1983 WL 538, at *5).  Defendants respond that Harris cannot claim irreparable harm as an employee separated from her position, *see* Defs.' Opp'n at 10–11, because the MSPB continues to function with a quorum, *see id.* at 11–13, and because the President has not yet nominated a successor, *see id.* at 13.  The Court concludes that Harris has established irreparable harm in this case.

To sustain injunctive relief, the threat of irreparable injury must be "*likely* in the absence of an injunction," rather than a mere "possibility."  *Winter*, 555 U.S. at 22.  The injury must be

---

[3] Defendants argue that Harris cannot show entitlement to reinstatement because she has been removed from office, and "[t]he President cannot be compelled to retain the services of a principal officer whom the President no longer believes should be entrusted with the exercise of executive power."  Defs.' Opp'n at 10.  Defendants posit that Harris's remedy should be limited to back pay.  *See id. Sampson v. Murray*, 415 U.S. 61 (1974), discussed further below, appears to cut against this conclusion, as there the Supreme Court did "not wish to be understood as foreclosing [injunctive] relief in the genuinely extraordinary situation."  *Id.* at 92 n.68.  In addition, the Court's job at this stage is to determine whether to issue a temporary restraining order preserving the "the regime in place" before Defendants issued the termination order while these issues are fully considered.  *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022).

truly irreparable: "[m]ere injuries, however substantial, in terms of money, time and energy
necessarily expended in the absence of a[n injunction] are not enough." *Chaplaincy of Full
Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wisc. Gas Co. v. Fed.
Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). The "the irreparable
harm analysis . . . assumes, without deciding, that the movant has demonstrated a likelihood that
the non-movant's conduct violates the law." *Id.* at 303.

In addition, a federal employee seeking an injunction requiring the Government to
employ her during the course of litigation "must make a showing of irreparable injury sufficient
in kind and degree to override" the Government's traditional autonomy over its internal affairs,
which "cut[s] against the availability of preliminary injunctions in Government personnel cases."
*Sampson v. Murray*, 415 U.S. 61, 84 (1974). In *Sampson*, the Supreme Court considered
whether a probationary employee at the General Services Administration could receive a
temporary restraining order enjoining her dismissal during an administrative appeal to the Civil
Service Commission. *Id.* at 62–63. The Court concluded that, particularly considering the
Government's prerogative to manage its employees, the loss of wages and reputation that may be
remedied through further proceedings fell "far short of the type of irreparable injury which is a
necessary predicate to the issuance of a temporary injunction in this type of case." *Id.* at 91–92.
The Court nonetheless allowed that a "District Court is not totally without authority to grant
interim injunctive relief to a discharged Government employee," *id.* at 63, and that relief may be
appropriate "in the genuinely extraordinary situation," rather than "in the routine case." *Id.* at 92
n.68.

Harris has established that this case represents a "genuinely extraordinary situation"
meriting injunctive relief for a discharged Government employee. Unlike the probationary

employee in *Sampson*, Harris was appointed Chairman of a federal agency and confirmed by the Senate.[4]  *See Sampson*, 415 U.S. at 80–81.  The conditions under which the President may end her tenure are made plain by federal statute and supported by ninety years of Supreme Court precedent.  *See Dellinger*, at *10 (finding *Sampson*'s "analysis" to be "of little utility" in case of employee terminated despite for-cause removal protections).  *Sampson* additionally relied on "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria & Rest. Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy*, 367 U.S. 886, 896 (1961)).  Yet that concern is minimized in the context of an action that at this stage appears to be nakedly illegal, such that the Government's range of options is necessarily constrained.

Harris cites *Berry v. Reagan*, which—although vacated as moot under *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950), *see* 732 F.2d 949—remains instructive here.  *See* Pl.'s Mot. at 10–11.  In that case, Congress established "[t]he Commission on Civil Rights [as a] temporary, bipartisan agency" to be "composed of six members, appointed by the President, by and with the advice and consent of the Senate."  *Berry*, 1983 WL 538, at *1.  The commissioners were to serve for a fixed term set to "expire[] sixty days after submission of [the Commission's] final report and recommendations to the President and to Congress."  *Id.*  Three years after their appointments, President Reagan notified the commissioners of their termination, and they sought an injunction.  *Id.*

---

[4] Defendants cite numerous cases in which courts have declined to issue injunctive relief based on "the deprivation of a unique, singular, or high-level position."  Defs.' Opp'n at 11. None of these cases involved plaintiffs who enjoyed removal protections enacted by Congress and signed into law by the President.  Courts have found injunctive relief warranted in such situations.  *See Berry*, 1983 WL 538, at *5; *Dellinger*, 2025 WL 471022, at *14.

The *Berry* court proceeded through analysis remarkably similar to that here. The court considered whether the Civil Rights Act of 1957 contained a congressional intent to protect the commissioners' independence under *Humphrey's Executor*. *See id.* *2–4. After concluding that Congress intended the commissioners to serve for the full life of the Commission, the court moved on to consider irreparable harm. *See id.* at *4. The court then looked to *Sampson* to determine if the commissioners' injuries "override the factors militating against the issuance of preliminary relief" in Government personnel actions. *Id.* at *5. The court concluded that the injury was irreparable because denial of preliminary relief would have an "obviously disruptive effect" on "the Commission's final activities." *Id.* "Moreover," the court continued, "it is not clear that the President has the power to remove Commissioners at his discretion and that he should be given the widest latitude to exercise this authority." *Id.* In addition, the commissioners did "not have administrative, statutory, or other relief that is readily available to many federal employees." *Id.*[5] The court then granted the injunction. *Id.* at *6.

One Judge in this Circuit recently issued a temporary restraining order under similar circumstances. *See generally Dellinger*, 2025 WL 471022. In that case, the President terminated Special Counsel Hampton Dellinger, who was appointed to a five-year term to the independent Office of Special Counsel and "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* at *3 (quoting 5 U.S.C. § 1211(b)). The court concluded that these for-cause removal conditions were likely constitutional. *Id.* at *9. Analyzing the irreparable harm, the court also turned to *Sampson* and *Berry*, determining that Dellinger "was appointed for a fixed term, and he has a statutory mission that his removal has rendered him

---

[5] The parties do not discuss what administrative relief may be available to Harris here, so the Court does not consider the issue.

unable to fulfill." *Id.* at *11. "[T]he loss of the ability to do what Congress specifically directed him to do cannot be remediated with anything other than equitable relief." *Id.*

At the motion hearing in this case, Defendants argued that *Dellinger* is incorrect in part because the court there conflated the notion of an agency's statutory right to function with what they say is "essentially an employment action." But *Berry*, *Dellinger*, *Humphrey's Executor*, and *Wiener* together make clear that these cases represent far more than grievances over backpay and routine personnel issues. Like the plaintiffs in *Berry* and *Dellinger*, Harris was appointed to and confirmed as a member of an agency charged with acting with a degree of independence from the President. By vindicating their rights to occupy those offices, these plaintiffs act as much in their own interests as those of their agencies'.[6] The Supreme Court in *Humphrey's Executor* and *Wiener* similarly viewed the plaintiffs before them as vindicating the independence of their agencies and discussed at length the nature of the President's power over those agencies rather than the narrow issue of unpaid salaries. *See, e.g.*, *Humphrey's Executor*, 295 U.S. at 629 (discussing the relative authorities of Congress and the President over independent agencies); *Wiener*, 357 U.S. at 353–56 (same). The plaintiffs in these cases are not low-ranking staff members at those agencies, either—Dellinger was appointed to lead the Office of Special Counsel, and Harris was appointed as one of three members of the MSPB. Striking at the independence of these officials accrues harm to their offices, as well. *See Berry*, 1983 WL 538, at *5 (considering the effect on the federal agency of declining to issue an injunction); *English v. Trump*, 279 F. Supp. 3d 307, 335 (D.D.C. 2018) (same).

---

[6] Indeed, Harris stands before this Court in her personal *and* official capacities. *See* Compl. at 1; *see also* Pl.'s Reply at 4–6, ECF No. 7 (discussing harm to Harris in her official capacity).

With this in mind, the irreparable harm in this case becomes clear. Were the President able to displace independent agency heads from their positions for the length of litigation such as this, those officials' independence would shatter. *See* Pl.'s Mot. at 10 ("Simply put, Congress reasonably concluded that the MSPB cannot serve as an independent protector of a merit system if the Members are subject at all times to removal without cause by the President."); Pl.'s Reply at 7, ECF No. 7 ("Allowing Ms. Harris's illegal termination to stand for even a short period would violate the bipartisan, independent nature of the Board."). Even if this Court were to direct Harris's reinstatement after resolving the merits of her claims—a process that can take some time—the MSPB's congressionally mandated independence would be permanently marred by the threat of renewed removal and delayed reinstatement while litigation proceeds. *See Humphrey's Executor*, 295 U.S. at 629–30 (explaining that the "coercive influence" of the removal power "threatens the independence of a commission"). Harris would reenter the position as a Chairman of the MSPB who had just been removed from her role for a significant length of time, and "the Damocles' sword of removal by the President," *Wiener*, 357 U.S. at 356, would hang over her and her colleagues. This harm would accrue in the absence of a temporary restraining order, and the passage of time would both cause this damage and preclude a remedy. *See Wisc. Gas Co.*, 758 F.2d at 674 (stating that injunctive relief is appropriate when post-hoc "legal remedies" are "inadqeua[te]"). If there ever were an "extraordinary case[]" meriting injunctive relief for a Government employee, *Sampson*, 415 U.S. at 92 n.68, then this would be it.

Assuming that the Defendants' actions are unlawful, *see Chaplaincy of Full Gospel Churches* at 303, Harris additionally suffers irreparable harm because she is at present prevented from chairing the Board following Senate confirmation to that position, *see* Pl.'s Mot. at 10–11.

The *Berry* court reasoned that "deprivation" of the plaintiff commissioners' "statutory right to function as Commissioners" following "their unlawful removal from office by the President" represented irreparable harm.  1983 WL 538, at *5.  So too did the Special Counsel in *Dellinger* suffer irreparable harm by the inability to fulfill his "statutory mission" to protect employees from prohibited personnel practices, such that "the loss of the ability to do what Congress specifically directed him to do cannot be remediated with anything other than equitable relief." *Dellinger*, 2025 WL 471022, at *11.  MSPB members are similarly charged with protecting federal employees from prohibited practices, *see* 5 U.S.C. § 1204, and subtracting time from Harris's congressionally mandated seven-year term prevents her from carrying out the duties Congress has assigned to her.

Furthermore, Defendants contend that because Harris has been removed from office and seeks to return, she can suffer no injury in her capacity as a member of the MSPB.  *See* Defs.' Opp' at 10 (arguing that Harris "seek[s] judicial reinstatement to a principal office"); *id.* at 11 (comparing Harris's situation to those of government employees lacking tenure protections).  This puts the cart before the horse.  First, assuming that the President lacked the power to terminate Harris without cause, then she rightfully remains a Senate-confirmed member of the MSPB.  *See Humphrey's Executor* at 629 (holding that the removal "power does not extend to an office such as that here involved").  Defendants thus conflate wrongful termination with the lack of power to effectuate termination—at least without cause.  Second, this position fails to recognize that any later reinstatement of Harris would not restore the state of affairs that existed prior to her purported termination, given that she would not longer serve as a member of a truly independent agency.

17

Defendants contend that Harris "cites no injury of a kind that the Supreme Court has recognized as irreparable in this context." Def.'s Mot. at 11 (citing *Sampson*, 415 U.S. at 92 & n.6). They aver that "court after court in this Circuit and others has concluded that loss of employment does not constitute irreparable harm." *Id.* Indeed, it is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisc. Gas Co.*, 758 F.2d at 674. Yet courts often reach this conclusion based on the notion that a wrongfully discharged employee may be entitled to back pay. *See, e.g.*, *id.* (reasoning that "adequate compensatory or other corrective relief [may] be available at a later date"); *Sampson*, 415 U.S. at 90; *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999); *Williams v. Walsh*, 619 F. Supp. 3d 48, 63–64 (D.D.C. 2022). That is not the issue in this case. Harris does not seek compensatory damages, but rather complains of injury arising from her inability to occupy a position at an independent agency following her presidential appointment and Senate confirmation.

Defendants additionally cite *English v. Trump* for the notion that "'any such harm' to Plaintiff coming solely from her not functioning as a Member of the MSPB 'can be remediated in the ordinary course of this case.'" Defs.' Opp'n at 12 (quoting *English*, 279 F. Supp. at 335). In *English*, the CFPB Director resigned, he appointed his Deputy to take his place, and an apparent conflict arose between two statutes governing succession at the agency. *English*, 279 F. Supp. at 319. One provision of the Dodd-Frank Act stated that the CFPB Deputy Director would "serve as acting Director in the absence or unavailability of the Director." *Id.* (quoting 12 U.S.C. § 5491(b)(5)(B)). The Federal Vacancy Reform Act ("FVRA"), however, also grants the President the power to appoint acting officers either from within a federal agency or from a different agency if the official is Senate-confirmed. *See id.* at 312. The *English* court

18

determined that the two statutes could be read to avoid a conflict, such that the Dodd-Frank Act provided a default rule that the President may override under the FVRA. *Id.* at 319. Even assuming that the Deputy Director were likely to prevail, however, the court found no irreparable harm because CFPB would continue to operate, and the Deputy Director never functioned as the CFPB's acting director. *See id.* at 334 (distinguishing *Berry*).

*English* does not guide the outcome here for at least three reasons. First, Harris was duly appointed to her position at the MSPB. In contrast, the Deputy Director in *English* was not Senate-confirmed to carry out specific duties and never occupied the position of acting Director. *See id.* at 335; *see also Dellinger*, 2025 WL 471022, at *12. The Deputy Director was instead denied the opportunity to fill a role in the context of a statutory conflict between the Dodd-Frank Act and the FVRA, and she was not attempting to preserve the status quo. *See English*, 279 F. Supp. at 335; *see also Dellinger*, 2025 WL 471022, at *12. Second, Harris was terminated from her Senate-confirmed position without cause, while the Deputy Director was not fired from any position, much less one from which she could be removed solely for cause. *See English*, 279 F. Supp. at 313–15. Finally, Harris's termination from the MSPB has foreclosed her ability to carry out the agency's mission, whereas the Deputy Director remained in place at the CFPB. *See id.* at 334.[7]

For the foregoing reasons, the Court finds that Harris has demonstrated a likelihood that she will experience irreparable harm that cannot be remedied by her reinstatement once the merits have been decided.[8]

---

[7] The parties additionally appeal to *Mackie v. Bush*, 809 F. Supp. 144 (D.D.C.), to support their respective positions. *See* Pl.'s Mot. at 11; Defs.' Opp'n at 12–13. *Mackie* is inapplicable here for the reasons articulated in *Dellinger*. *See Dellinger*, 2025 WL 471022, *11 n.6.

[8] The Court does not, at present, find the threat of Harris's replacement to represent

### C.  Balance of the Equities and Public Interest

Harris argues that the balance of the equities and public interest weigh in her favor because the Government's recent flurry of personnel actions has led to uncertainty that requires stability at the MSPB.  Pl.'s Mot. at 12.  Defendants respond that the public interest counsels against injunctive relief, which would "intru[de] into the President's authority to exercise 'all of' the 'executive Power' of the United States."  Defs.' Opp'n at 13–14.

Given that federal law limits the conditions under which Harris's tenure may be terminated, Supreme Court precedent supports the constitutionality of those conditions, and Defendants do not argue that those conditions were met here, the Court finds that it is in the public interest to issue injunctive relief.  "[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).  So too is there substantial public interest in the protections from removal Congress has given to certain members of independent agencies.  Furthermore, the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

### V.  CONCLUSION

For the foregoing reasons, Plaintiff Cathy A. Harris's Motion for Temporary Restraining Order is **GRANTED**; and it is

---

irreparable injury, as she does not establish that the President is "likely" to nominate a replacement "in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted); *see* Defs.' Opp'n at 13 (citing *English*, 279 F. Supp. 3d at 335).

**FURTHER ORDERED** that from the date of entry of this Court's Order until the Court rules on a preliminary injunction, Plaintiff Cathy A. Harris shall continue to serve as Chairman of the MSPB.  Defendants Secretary Scott Bessent, Deputy Director Trent Morse, Director Sergio Gor, Acting Chairman Henry Kerner, and Director Russell Vought are **ENJOINED** from removing Harris from her office or in any way treating her as having been removed, denying or obstructing Harris's access to any of the benefits or resources of her office, placing a replacement in Harris's position, or otherwise recognizing any other person as a member of the MSPB in Harris's position, pending further order of the Court; and it is

**FURTHER ORDERED** that Harris shall file any motion for a preliminary injunction on or before February 23, 2025.  Defendants shall file any opposition on or before February 28, 2025.  Harris shall file any reply on or before March 2, 2025; and it is

**FURTHER ORDERED** that the parties shall appear for a hearing on the motion for preliminary injunction, if such a motion is filed, on March 3, 2025, at 2:00 p.m., and that the Court will rule on the preliminary injunction as soon as possible thereafter; and it is

**FURTHER ORDERED** that the parties shall meet, confer, and submit a joint status report, on or before February 19, 2025, informing the Court of their respective positions on whether consideration of the motion for preliminary injunction should be consolidated with the merits pursuant to Federal Rule of Civil Procedure 65(a)(2).

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 18, 2025                                   RUDOLPH CONTRERAS
                                                                            United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CATHY A. HARRIS, *in her personal capacity and in her official capacity as Member of the Merit Systems Protection Board*, | : : : : | | |
| Plaintiff, | : : | Civil Action No.: | 25-412 (RC) |
| v. | : : | Re Document No.: | 2 |
| SCOTT BESSENT, *in his official capacity as Secretary of the Treasury*, et al., | : : : | | |
| Defendants. | : | | |

## ORDER

### GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

For the reasons stated in the Court's Memorandum Opinion separately and contemporaneously issued, Plaintiff Cathy A. Harris's Motion for Temporary Restraining Order (ECF No. 2) is **GRANTED**. It is hereby:

**ORDERED** that from the date of entry of this Court's Order until the Court rules on a preliminary injunction, Plaintiff Cathy A. Harris shall continue to serve as Chairman of the MSPB. Defendants Secretary Scott Bessent, Deputy Director Trent Morse, Director Sergio Gor, Acting Chairman Henry Kerner, and Director Russell Vought are **ENJOINED** from removing Harris from her office or in any way treating her as having been removed, denying or obstructing Harris's access to any of the benefits or resources of her office, placing a replacement in Harris's position, or otherwise recognizing any other person as a member of the MSPB in Harris's position, pending further order of the Court; and it is

**FURTHER ORDERED** that Harris shall file any motion for a preliminary injunction on or before February 23, 2025.  Defendants shall file any opposition on or before February 28, 2025.  Harris shall file any reply on or before March 2, 2025; and it is

**FURTHER ORDERED** that the parties shall appear for a hearing on the motion for preliminary injunction, if such a motion is filed, on March 3, 2025, at 2:00 p.m., and that the Court will rule on the preliminary injunction as soon as possible thereafter; and it is

**FURTHER ORDERED** that the parties shall meet, confer, and submit a joint status report, on or before February 19, 2025, informing the Court of their respective positions on whether consideration of the motion for preliminary injunction should be consolidated with the merits pursuant to Federal Rule of Civil Procedure 65(a)(2).

**SO ORDERED**.

Dated:  February 18, 2025                                    RUDOLPH CONTRERAS
                                                            United States District Judge