# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CATHY A. HARRIS,
*Plaintiff-Appellee,*

v.

SCOTT BESSENT, Secretary of the Treasury, et al.,
*Defendants-Appellants.*

On Appeal from the United States District Court for the
District of Columbia, No. 1:25-cv-00412-RC

## BRIEF OF *AMICI CURIAE* FLORIDA, ALABAMA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, TENNESSEE, TEXAS, UTAH, WEST VIRGINIA AND THE ARIZONA LEGISLATURE IN SUPPORT OF APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL

|                                      | JAMES UTHMEIER                    |
|--------------------------------------|-----------------------------------|
|                                      | *Attorney General of Florida*     |
|                                      |                                   |
|                                      | JEFFREY PAUL DESOUSA              |
|                                      | *Acting Solicitor General*        |
|                                      | *Counsel of Record*               |
| Office of the Attorney General       | NATHAN A. FORRESTER               |
| PL-01, The Capitol                   | DAVID M. COSTELLO                 |
| Tallahassee, FL 32399-1050           | *Chief Deputy Solicitors General* |
| (850) 414-3300                       | DARRICK W. MONSON                 |
| *jeffrey.desousa@*                   | ROBERT S. SCHENCK                 |
| *myfloridalegal.com*                 | *Assistant Solicitors General*    |
|                                      |                                   |
| March 9, 2025                        | *Counsel for* Amici Curiae        |

# CERTIFICATE AS TO PARTIES, FILINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies the following:

## Parties, Intervenors, and Amici

All parties, intervenors, and amici appearing before the district court and in this Court are listed in Appellants' stay application, except for each of the amici submitting this brief.

## Rulings Under Review

References to the rulings at issue appear in Appellants' stay application.

## Related Cases

Cathy Harris v. Scott Bessent et al., No. 1:25-cv-00412-RC (D.D.C.).

Cathy Harris v. Scott Bessent et al., No. 25-5037 (D.C. Cir.).

Cathy Harris v. Scott Bessent et al., No. 25-5055 (D.C. Cir.).

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, FILINGS, AND RELATED CASES ..................................................................................i

TABLE OF AUTHORITIES ..................................................................iii

INTEREST OF *AMICI CURIAE* .............................................................. 1

ARGUMENT ................................................................................... 1

I.   Historically, equity courts would not remedy allegedly unlawful removals. ........................................................... 2

II.  Congress has displaced any removal-related equitable remedies through the writ of quo warranto. .................................. 8

III. A court may not evade these limitations on equitable authority by ordering officials subordinate to the President to act as if an individual he removed still holds office. ............................................................................. 9

CONCLUSION .................................................................................. 13

CERTIFICATE OF COMPLIANCE ........................................................ 14

CERTIFICATE OF SERVICE ................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984) .................. 7, 8, 11, 12

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015)........................................................................................8

*Att'y Gen. v. Earl of Clarendon*, 17 Ves. Jr. 491, 34 Eng. Rep. 190 (Ch. 1810) ..................................................................3

*Baker v. Carr*, 369 U.S. 186 (1962) ..........................................6

*Beebe v. Robinson*, 52 Ala. 66 (1875)........................................5

*Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983).....................................................................................7

*Bessent v. Dellinger*, 145 S. Ct. 515 (2025) ...........................2, 8

*Case v. Beauregard*, 101 U.S. 688 (1880)....................................8

*Cochran v. McCleary*, 22 Iowa 75 (1867) ..................................4

*Delahanty v. Warner*, 75 Ill. 185 (1874) ..................................5

*Delgado v. Chavez*, 140 U.S. 586 (1891) ..................................12

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)....................... 8, 10

*Georgia v. Stanton*, 73 U.S. (6 Wall.) 50 (1867).........................3

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999).........................................................2, 7

*Hagner v. Heyberger*, 7 Watts & Serg. 104 (Penn. 1844) ......................4

*Heckler v. Ringer*, 466 U.S. 602 (1984) .............................12, 13

*In re Sawyer*, 124 U.S. 200 (1888)...................... 2, 3, 4, 5, 6, 11

*Johnson v. Horton*, 63 F.2d 950 (9th Cir. 1933) ...................................... 7

*Kloeckner v. Solis*, 568 U.S. 41 (2012)................................................... 10

*Nw. Airlines, Inc. v. Transport Workers*, 451 U.S. 77 (1981) ................ 12

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75 (D.C. Cir. 2018)................................................................................ 11

*Russello v. United States*, 464 U.S. 16 (1983).......................................... 9

*Sampson v. Murray*, 415 U.S. 61 (1974) ................................................. 10

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020)................................................................................. 11

*Service v. Dulles*, 354 U.S. 363 (1957)................................................... 10

*Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023)........................... 10, 11

*Sheridan v. Colvin*, 78 Ill. 237 (1875) ..................................................... 5

*Stapf v. United States*, 367 F.2d 326 (D.C. Cir. 1966)............................ 11

*State ex rel. McCaffery v. Aloe*, 54 S.W. 494 (Mo. 1899) ......................... 5

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .......... 7, 10, 11

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) .............................. 10, 11

*Tappan v. Gray*, 9 Paige Ch. 507 (Ch. Ct. N.Y. 1842) ............................. 4

*Taylor v. Kercheval*, 82 F. 497 (C.C.D. Ind. 1897) .................................. 5

*United States v. Old Dominion Boat Club*, 630 F.3d 1039 (D.C. Cir. 2011) ................................................................................ 12

*Vitarelli v. Seaton*, 359 U.S. 535 (1959).............................................. 7, 10

*Walton v. House of Representatives of Okla.*, 265 U.S. 487 (1924).......................................................................................... 2, 6, 10

*Webster v. Fall*, 266 U.S. 507 (1925) ....................................................... 11

*Whitcomb v. Chavis*, 403 U.S. 124 (1971) ................................................. 2

*White v. Berry*, 171 U.S. 366 (1898) ........................................................ 6

**Statutes**

42 U.S.C. § 2000e-5 .................................................................................. 1

D.C. Code § 16-3501 *et seq.* (2024) ..................................................... 8, 13

D.C. Code § 16-3545 .......................................................................... 8, 9, 10

D.C. Code § 16-3546 .................................................................................. 9

D.C. Code § 16-3547 .................................................................................. 9

D.C. Code § 16-3548 ............................................................................ 9, 10

**Rules**

D.C. Circuit Rule 29 ................................................................................. 1

**Other Sources**

Eugene McQuillin, *A Treatise on the Law of Municipal Corporations* (1911) ....................................................................... 5

Howard Clifford Joyce, *A Treatise on the Law Relating to Injunctions* (1909) ........................................................................... 5

James L. High, *Extraordinary Legal Remedies* (1896)........................... 12

James L. High, *Treatise on the Law of Injunctions* (2d ed. 1880)........................................................................................................ 5

John Norton Pomeroy, *A Treatise on Equity Jurisprudence* (4th ed. 1918) ............................................................................... 5

Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof* (2d ed. 1840)...........................................................3

Letter from John Adams to the Inhabitants of the Colony of Massachusetts-Bay, April 1775...........................................................3

Nikolas Bowie, *Why the Constitution Was Written Down*, 71 Stan. L. Rev. 1397 (2018)...........................................................3

Seth Davis, *Empire in Equity*, 97 Notre Dame L. Rev. 1985 (2022)...........................................................3

W.S. Holdsworth, *English Corporation Law in the 16th and 17th Centuries*, 31 Yale L.J. 382 (1922)...........................................4

## INTEREST OF *AMICI CURIAE*

Pursuant to D.C. Circuit Rule 29, the Attorney General of Florida—on behalf of the States of Florida, Florida, Alabama, Arkansas, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Oklahoma, South Carolina, Tennessee, Texas, Utah, West Virginia and the Arizona Legislature—respectfully submits this brief as *amici curiae* in support of the stay motion. *Amici* have an interest in ensuring that federal officials exercising significant executive authority are removable by the President, and thus politically accountable to the people. Anything less is inconsistent with the Framers' design and risks federal intrusion on state sovereignty.

## ARGUMENT

As the Government explains, the district court erred on the merits. *See* Emerg. Mot. for Stay, No. 25-5052 at 9–17. But the court also erred on the remedy. Federal courts may not use their equitable powers to remedy unlawful removals absent an act of Congress. *See, e.g.*, 42 U.S.C. § 2000e-5(g) (authorizing courts to "reinstate[]" employees who suffer discrimination). Yet the district court rendered that rule a nullity. It reinstated Harris "*de facto*" by enjoining executive branch officials "from

removing Harris from her office without cause or in any way treating her as having been removed." DE40 at 20–23, 34. That maneuver flouts both the Supreme Court's equity precedents and Congress's decision to channel removal challenges through quo warranto proceedings. A stay is warranted.

## I. Historically, equity courts would not remedy allegedly unlawful removals.

"The remedial powers of an equity court . . . are not unlimited." *Whitcomb v. Chavis*, 403 U.S. 124, 161 (1971). Federal courts may issue only equitable remedies "traditionally accorded by courts of equity." *Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., joined by Alito, J., dissenting) (quoting *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)). And history teaches that "[a] court of equity has no jurisdiction over the appointment and removal of public officers." *Walton v. House of Representatives of Okla.*, 265 U.S. 487, 490 (1924); *Dellinger*, 145 S. Ct. at 517 (Gorsuch, J., dissenting) (finding it "well settled that a court of equity has no jurisdiction over the appointment and removal of public officers" (quoting *In re Sawyer*, 124 U.S. 200, 212 (1888)).

That rule flows from English common law. Recognizing the critical "distinction between judicial and political power," English courts would not wield equity to vindicate a litigant's "political right[]" to office. *Georgia v. Stanton*, 73 U.S. (6 Wall.) 50, 71, 76 & n.20 (1867) (collecting cases); *see Sawyer*, 124 U.S. at 212 (collecting cases, including *Attorney General v. Earl of Clarendon*, 17 Ves. Jr. 491, 498, 34 Eng. Rep. 190, 193 (Ch. 1810)). In *Earl of Clarendon*, for instance, the English Court of Chancery declined to remove public-school officers for lack of necessary legal qualifications. 34 Eng. Rep. at 191. According to that court, a court of equity "has no jurisdiction with regard either to the election or the [removal] of" officers. *Id.* at 193. Contemporary English cases agreed. *See* Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof* §§ 467–70 (2d ed. 1840) (explaining that equity courts would not adjudicate rights of a "political nature"); Seth Davis, *Empire in Equity*, 97 Notre Dame L. Rev. 1985, 2011–12 (2022).[1]

---

[1] Although *Earl of Clarendon* and some cases cited in *Sawyer* involved corporate officers, those legal entities were historically treated more like governments and public entities. Colonial governments, for instance, were created through corporate charters, with "shareholders" acting like modern-day voters and voting for corporate boards that looked like modern-day state and local governments. Nikolas Bowie,

American courts imported that principle after the Framing. In the early 19th century, courts nationwide denied equitable relief to removed officials, even when the official's ouster was illegal and unauthorized. *Tappan v. Gray*, 9 Paige Ch. 506, 508–09 (Ch. Ct. N.Y. 1842); *see also Hagner*, 7 Watts & Serg. at 105; *Sawyer*, 124 U.S. at 212 (collecting cases). *Hagner* is emblematic. There, the Supreme Court of Pennsylvania declined to enjoin a defendant from unlawfully acting as a school director because it possessed no more power than "an English court of chancery." *Hagner*, 7 Watts & Serg. at 106–07. Because chancery courts traditionally "would not sustain the injunction proceeding to try the election or [removal] of corporators of any description," Pennsylvania's high court

---

*Why the Constitution Was Written Down*, 71 Stan. L. Rev. 1397, 1416–21 (2018); *see also* Letter from John Adams to the Inhabitants of the Colony of Massachusetts-Bay, April 1775, https://founders.archives.gov/documents/Adams/06-02-02-0072-0015. And as noted in *Hagner v. Heyberger*, limits on equitable jurisdiction that applied to "private corporations" apply "*à fortiori*" to "public officer[s] of a municipal character." 7 Watts & Serg. 104, 105 (Penn. 1844); *see also* W.S. Holdsworth, *English Corporation Law in the 16th and 17th Centuries*, 31 Yale L.J. 382, 383–84 (1922) (For both public and private corporations, "creation by and subordination to the state are the only terms upon which the existence of large associations of men can be safely allowed to lead an active life.").

held that it could not either. *Id.* Other courts took a similar tack through-

out Reconstruction.[2]

The Supreme Court confirmed that equitable constraint in *Sawyer*.

A locally elected officer there obtained a federal injunction barring local

officials from removing him. 124 U.S. at 204–06. After the local officials

were held in contempt of that injunction, the Court issued a writ of ha-

beas corpus to vacate their convictions because the injunction was issued

without jurisdiction. The Court explained that a federal equity court "has

no jurisdiction . . . over the appointment and removal of public officials."

*Id.* at 210. And a wall of contemporary treatises echoed that understand-

ing.[3] As one 19th-century commentator put it, "[n]o principle of the law

of injunctions" "is more definitely fixed or more clearly established than

---

[2] *See, e.g.*, *Cochran v. McCleary*, 22 Iowa 75, 91 (1867) ("The right
to a public office or franchise cannot, as the authorities above cited show,
be determined in equity."); *Sheridan v. Colvin*, 78 Ill. 237, 247 (1875) sim-
ilar); *Delahanty v. Warner*, 75 Ill. 185, 186 (1874) (similar); *Beebe v. Rob-
inson*, 52 Ala. 66, 73 (1875) (similar); *Taylor v. Kercheval*, 82 F. 497, 499
(C.C.D. Ind. 1897) (similar); *State ex rel. McCaffery v. Aloe*, 54 S.W. 494,
496 (Mo. 1899) (similar).

[3] *See* 2 James L. High, *Treatise on the Law of Injunctions* § 1312 (2d
ed. 1880); 1 Howard Clifford Joyce, *A Treatise on the Law Relating to In-
junctions* § 55 (1909); 4 John Norton Pomeroy, *A Treatise on Equity Ju-
risprudence* § 1760 (4th ed. 1918); 2 Eugene McQuillin, *A Treatise on the
Law of Municipal Corporations* § 582 n.98 (1911).

that courts of equity will not interfere by injunction to determine questions concerning the appointment of public officers or their title to office." 2 High, *Law of Injunctions* § 1312.

A decade after *Sawyer*, the Supreme Court reiterated that equity courts may "not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another." *White v. Berry*, 171 U.S. 366, 377 (1898). The Court restated the point in *Walton*: While federal courts are "*particularly* . . . without jurisdiction over the appointment and removal of state officers," they no more possess "jurisdiction over the appointment and removal of [other] public officers." 265 U.S. at 490 (emphasis added). And it repeated the principle in *Baker v. Carr*—"federal equity power [may] not be exercised to enjoin a state proceeding to remove a public officer." 369 U.S. 186, 231 (1962).

By contrast, there is no established tradition of equity courts' remedying unlawful removals, at least not without express statutory authorization. *See Dellinger*, 145 S. Ct. at 517 (Gorsuch, J., dissenting) ("'No English case' involved 'a bill for an injunction to restrain the appointment or removal of a municipal officer.'" (quoting *Sawyer*, 124 U.S. at 212)). We

know of only two cases[4] in which a federal court reinstated a removed officer, all of which were decided in the later 20th century, and none of which grappled with limits on federal remedial power. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by" rulings have "no precedential effect."). The lack of historical pedigree for removal-related remedies proves that they were "unknown to traditional equity practice." *Grupo Mexicano*, 527 U.S. at 327.

The absence of a historical equitable remedy is confirmed by the presence of a historical *legal* remedy: the writ of quo warranto. As this Court has acknowledged, "the exclusive remedy" for "direct[ly] attack[ing]" one's removal has traditionally been "a *quo warranto* action." *Andrade v. Lauer*, 729 F.2d 1475, 1497 (D.C. Cir. 1984); *see also Johnson v. Horton*, 63 F.2d 950, 953 (9th Cir. 1933) (agreeing with appellees that "the question of the title to the office cannot be tried by a proceeding in equity, but that the exclusive remedy is by a writ of quo warranto" (quotation omitted)). And because a "court of equity will not entertain a case

---

[4] *Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983); *Vitarelli v. Seaton*, 359 U.S. 535 (1959).

for relief where the complainant has an adequate legal remedy," the longstanding "availability of quo warranto" undercuts any "novel equitable power to return an agency head to his office." *Dellinger*, 145 S. Ct. at 517 (Gorsuch, J., dissenting) (quoting *Case v. Beauregard*, 101 U.S. 688 (1880)).

## II. Congress has displaced any removal-related equitable remedies through the writ of quo warranto.

Even if equity courts historically could have remedied improper removals, Congress has "displace[d] [that] equitable relief," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015), through the quo warranto framework in D.C. Code § 16-3501 *et seq.* (2024). That framework establishes a comprehensive judicial mechanism for determining whether an officer of the United States has "usurped, intruded into, or unlawfully held or exercised an office" belonging to a removed official. D.C. Code § 16-3545; *see Andrade*, 729 F.2d at 1497–98. "Given the painstaking detail with which the [Code] sets out the method" for challenging a removal, "Congress intended" the Code to be the "exclusive" process for testing one's title to office. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11–13 (2012).

That process, however, does not authorize novel equitable relief in cases involving a federal official. In such cases, courts may only "oust[]" the "usurpe[r]" from office, D.C. Code § 16-3545, and award "damages sustained by" the removed official, *id.* § 16-3548. Nor are equitable remedies implied by the provision governing federal officials, *id.* § 16-3545, for equitable remedies are expressly authorized in *different* Code provisions relating exclusively to corporate officers. *See* D.C. Code §§ 16-3546 (authorizing courts to "perpetually restrain[] and enjoin[]" "persons acting as a corporation without being legally incorporated" in the District), -3547 ("the court may render judgment . . . that the relator, if entitled to be declared elected, be admitted to the office"). The "inclu[sion of] particular language" authorizing remedies in other sections suggests that Congress "intentionally and purposely" omitted those remedies in the section governing federal officers. *Russello v. United States*, 464 U.S. 16, 23 (1983).

## III. A court may not evade these limitations on equitable authority by ordering officials subordinate to the President to act as if an individual he removed still holds office.

Nothing in the district court's order justifies enjoining executive branch officials from "removing Harris" or "treating her as having been

removed." DE40 at 20–23, 34. That move defies Supreme Court precedent. *See Walton*, 265 U.S. at 490 (A federal "court of equity has no jurisdiction over the appointment and removal of public officers."). And it ignores that Congress has displaced all removal-related remedies except damages and ouster. *See* D.C. Code §§ 16-3545, 16-3548.

None of the Supreme Court cases cited by the district court support its novel relief. The Court did not bless reinstatement in *Sampson v. Murray*—it did just the opposite. It questioned whether reinstatement was a permissible equitable remedy and avoided the question by denying relief for lack of irreparable harm. 415 U.S. 61, 69–72, 83–84 (1974). *Service v. Dulles* offers no help, either; it ruled on the merits and said nothing about remedy. 354 U.S. 363, 382 (1957). Even further afield are *Elgin* and *Kloeckner v. Solis*, 568 U.S. 41 (2012), both of which discussed *statutory* reinstatement, not the federal courts' baseline equitable power. And *Vitarelli* constitutes a mere "drive-by" remedial ruling with "no precedential effect." *Steel Co.*, 523 U.S. at 91.

Nor do *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), or *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023)), aid the district court. As the Government points out, those cases assessed for standing purposes

whether there was a "likelihood" that the court could issue an injunction sufficient to remedy the challenged removal. *See Steel Co.*, 523 U.S. at 103. That standing question did not resolve whether those injunctions could lawfully issue after a proceeding on the merits. Even more, neither the panels nor the parties in those cases mentioned the *Sawyer* line of decisions, and "it is black-letter law that cases are not precedent for issues that were not raised or decided." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 195 (D.C. Cir. 2018) (Kavanaugh, J., dissenting), *abrogated by Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020). Whether *Sawyer* bars the injunctions theorized in those cases "merely lurk[ed] in the record," *Webster v. Fall*, 266 U.S. 507, 511 (1925), so neither case "constitute[s] precedent[]" on the issue, *Stapf v. United States*, 367 F.2d 326, 330 (D.C. Cir. 1966).

Any other reading of *Swan* and *Severino* would conflict with an earlier precedent of this Court: *Andrade v. Lauer*. In *Andrade*, the Court accepted that "the exclusive remedy" for a "'direct' attack" on removal "is a *quo warranto* action," not a suit in equity. 729 F.2d at 1497. Though the Court carved out a narrow equitable exception through which a court may "indirect[ly]" remedy a removal by "restrain[ing] invalidly appointed

officers" from performing their duties, *id.* at 1496–98, it left intact the general principle that direct efforts to confirm entitlement to office must travel through quo warranto, *see id.* at 1497–99. That principle contradicts the injunctions proposed in *Swan* and *Severino*. And because *Andrade* predates both cases, it is the controlling precedent. *United States v. Old Dominion Boat Club*, 630 F.3d 1039, 1045 (D.C. Cir. 2011).

Last, the district court wrongly held, in the alternative, that mandamus was warranted. *See* DE40 at 23–27. As the Government notes, the duties implicated here are far from "clear." *Heckler v. Ringer*, 466 U.S. 602, 615–16 (1984). Congress enacted the quo warranto and mandamus statutes, moreover, on common-law backdrop that established quo warranto as "the only efficacious and specific remedy" for "testing the title to an office." James L. High, *Extraordinary Legal Remedies* § 49 (1896); *see also Delgado v. Chavez*, 140 U.S. 586, 590 (1891). By establishing the "comprehensive" "remedial scheme" in the quo warranto statute, Congress "strongly evidence[d] an intent not to authorize additional remedies," like mandamus. *Nw. Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 93–94 (1981). And even then, mandamus is available "only if [the plaintiff] has exhausted all other avenues of relief." *Heckler*, 466 U.S. at

615–16. Harris has left quo warranto on the table. *See* D.C. Code § 16-3501 *et seq.* Those grounds foreclose mandamus.

## CONCLUSION

The stay should be granted.

Dated: March 9, 2025               Respectfully submitted,

JAMES UTHMEIER
  *Attorney General of Florida*

 */s/ Jeffrey Paul DeSousa*    
JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
  *Counsel of Record*
NATHAN A. FORRESTER
DAVID M. COSTELLO
  *Chief Deputy Solicitors General*
DARRICK W. MONSON
ROBERT S. SCHENCK
  *Assistant Solicitors General*
State of Florida
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*jeffrey.desousa@myfloridalegal.com*

*Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,593 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in 14-point Century Schoolbook, a proportionally spaced typeface.

*/s/ Jeffrey Paul DeSousa*
Jeffrey Paul DeSousa
Acting Solicitor General

**CERTIFICATE OF SERVICE**

I certify that on March 9, 2025, I caused this document to be electronically filed with the Clerk of Court using this Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Jeffrey Paul DeSousa*
Jeffrey Paul DeSousa
Acting Solicitor General
