**ORAL ARGUMENT HELD MAY 16, 2025**

Nos. 25-5037, 25-5055

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

CATHY A. HARRIS, IN HER PERSONAL CAPACITY AND IN HER OFFICIAL CAPACITY AS MEMBER OF THE MERIT SYSTEMS PROTECTION BOARD,

*Plaintiff-Appellee*,

v.

SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia, No. 1:25-cv-00412-RC
Hon. Rudolph Contreras, J.

## PETITION FOR PANEL REHEARING AND REHEARING EN BANC

MICHAEL J. KATOR
JEREMY D. WRIGHT
KERRIE D. RIGGS
KATOR, PARKS, WEISER & WRIGHT, P.L.L.C.
1150 Connecticut Ave. NW
Suite 705
Washington, DC 20036
(202) 898-4800
mkator@katorparks.com

NATHANIEL A.G. ZELINSKY
SAMANTHA BATEMAN
MARY L. DOHRMANN†
KYLE R. FREENY
JAMES I. PEARCE††
WASHINGTON LITIGATION GROUP
1717 K St. NW
Suite 1120
Washington, DC 20006
(202) 521-8750
nzelinsky@washington litigationgroup.org

NEAL KUMAR KATYAL
*Counsel of Record*
MILBANK LLP
1101 New York Ave. NW
Washington, DC 20006
(202) 835-7500
nkatyal@milbank.com

LINDA M. CORREIA
CORREIA & PUTH, PLLC
1400 16th St. NW
Suite 450
Washington, DC 20036
(202) 602-6500
lcorreia@correiaputh.com

*Counsel for Appellee Cathy A. Harris*

December 12, 2025

† *admitted only in New York; practicing under supervision of D.C. Bar members*
†† *admitted only in New York and North Carolina; practicing under supervision of D.C. Bar members*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................1

STATEMENT OF THE CASE.............................................................3

A.    District Court Proceedings..........................................................3

B.    Stay Proceedings.........................................................................4

C.    Merits Proceedings .....................................................................5

D.    The Administration Directs The MSPB How To Rule ..................7

ARGUMENT .......................................................................................9

I.    THE MSPB IS AN ARTICLE I COURT ..........................................9

II.   THE EN BANC COURT SHOULD ORDER EXPEDITED EN BANC REVIEW...........16

CONCLUSION ...................................................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Douglas v. Veterans Admin.*,
    5 M.S.P.R. 280 (1981) ...............................................................13, 14

*Harris v. Bessent*,
    No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) (en banc) .................4

*Harris v. Bessent*,
    No. 25-5037, 2025 WL 980278 (D.C. Cir. Mar. 28, 2025).......................4, 5, 10

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935)...............................................................................4

*Jackler v. Dep't of Just.*,
    DA-0752-25-0330-I-1 (M.S.P.B.) .........................................................8

*Jaroch v. Dep't of Just.*,
    DA-0752-25-0328-I-1 (M.S.P.B.) .........................................................8

*Kloeckner v. Solis*,
    568 U.S. 41 (2012)...............................................................................11

*NLRB v. Curtin Matheson Sci., Inc.*,
    494 U.S. 775 (1990)..............................................................................10

*Trump v. Wilcox*,
    145 S. Ct. 1415 (2025)...........................................................................5

*Tunik v. MSPB*,
    407 F.3d 1326 (Fed. Cir. 2005) .........................................................12

*Tunik v. Soc. Sec. Admin.*,
    93 M.S.P.R. 482 (2003) .....................................................................12

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021)...............................................................................14, 15

## TABLE OF AUTHORITIES—Continued

Page(s)

*Wiener v. United States*,
  357 U.S. 349 (1958)...................................................................4

**STATUTES:**

5 U.S.C. § 553(b)(A)...................................................................13

5 U.S.C. § 1103(a)(5)...................................................................10

5 U.S.C. § 1202(d) ...................................................................3

5 U.S.C. § 1204(a)(1)...................................................................10

**OTHER AUTHORITIES:**

Aaron Katersky, *Judge to review Maurene Comey's wrongful termination
  case against Trump administration*, ABC News (Dec. 1, 2025),
  https://tinyurl.com/57neu99d...................................................................9

Drew Friedman, *Fired EPA employees challenge agency, alleging free
  speech violations*, Fed. News Network (Dec. 3, 2025),
  https://tinyurl.com/yk99xzd4...................................................................7

Emily Ngo, *Immigration courts thrown into chaos as Trump administration
  purges dozens of judges*, POLITICO (Dec. 6, 2025),
  https://tinyurl.com/25u86bxy...................................................................7

Michael Kunzelman, *Prosecutor who handled high-profile Capitol riot
  cases sues government over his firing*, Associated Press (July 24, 2025),
  https://tinyurl.com/2f2unvcn...................................................................7

Practices and Procedures,
  63 Fed. Reg. 42685 (Aug. 11, 1998) ...................................................................12

Sarah N. Lynch and Andrew Grodsward, *US Justice Department fires
  several more employees from Jack Smith's team, sources say*, Reuters
  (July 14, 2025), https://tinyurl.com/3dhw5xyw/ ...................................................................7

## TABLE OF AUTHORITIES—Continued

Page(s)

*The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding*,
49 Op. O.L.C. __ (Sept. 26, 2025) (slip op.) .......................................................8

## INTRODUCTION

The Supreme Court just heard oral argument in *Trump v. Slaughter*, No. 25-332 (U.S.), and will likely issue its opinion by June of this year. So why should the Court rehear this case? And why now?

Because this appeal is critically different from *Slaughter*, and because time is of the essence. Unlike *Slaughter*, this appeal involves a purely adjudicatory tribunal—an Article I court—whose independence has grown increasingly critical in light of recent events regarding the civil service. As multiple Justices underscored at oral argument in *Slaughter*, Article I courts will likely remain constitutional, even if the government prevails in *Slaughter*. The panel should grant rehearing. If it does not, the Court should grant *en banc* review to avoid any unnecessary delay in protecting the nation's civil service.

This appeal concerns the Merit Systems Protection Board (MSPB), a judicial body that adjudicates discrete disputes involving civil servants. The Board is a purely adjudicatory tribunal of a kind that has existed since the Founding. The MSPB does not make policy or fill up vague statutes. The Board applies the law to facts in discrete cases. As a result, even if *Slaughter* invalidates policymaking independent agencies—like the Federal Trade Commission (FTC) and, perhaps, the National Labor Relations Board (NLRB)—this Article I court should still stand on firm constitutional footing.

1

The panel majority acknowledged the strong reasons for upholding Article I courts and appropriately bracketed them off—as the Supreme Court appears poised to do in *Slaughter*. But the panel rushed to invalidate the MSPB. It misconstrued the Board's judicial functions, characterizing this tribunal as a policymaking body that manages the federal workforce and administers statutes. That is wrong. As Judge Pan emphasized in dissent, the MSPB is a "purely adjudicatory" body. Add. 39 (Pan, J., dissenting). The Board is like the Tax Court or the Court of Appeals for Veterans Claims. If the MSPB is not constitutional, neither are those Article I courts.

The panel should grant rehearing. If it does not, the *en banc* Court's intervention is urgently needed. If the panel's mischaracterization of the Board's judicial role is the final word from the D.C. Circuit, the MSPB could be mistakenly lumped together with policymaking independent agencies. Indeed, that appears to be the government's strategy. Here and at the Supreme Court, the government has sublimated the issues surrounding the MSPB by emphasizing the FTC and the NLRB—in the hope that the MSPB will be lost in the mix. Whether that strategy succeeds—and whether the civil service system that Congress carefully set up is destroyed—are the kinds of weighty matters that cry out for the *en banc* Court's expertise and guidance.

Recent events have made the MSPB's independence imperative. Over the past year, the Administration has systematically terminated public servants in ways

that seem to facially violate the civil service laws.  Fired workers have challenged their terminations before the MSPB—a body that Congress intentionally designed to be independent.  But in September, the Department of Justice issued an opinion from the Office of Legal Counsel (OLC), instructing the MSPB to rule in the government's favor on an issue of law in those cases—essentially asserting the authority to control the Board's adjudicatory powers.  This undermines the Board's ability to fulfill its judicial functions—and it puts the civil service system that Congress devised at risk.

Delaying consideration of the merits risks breaking the civil service system, which Congress established, before courts can put it back together.  The Court should expedite consideration of this Petition and hold that the MSPB is a purely adjudicatory body.  Should the government then seek further review, the Supreme Court can decide the constitutionality of this Article I court, based on an accurate account of the MSPB's adjudicatory functions.

## STATEMENT OF THE CASE

### A.     District Court Proceedings

Cathy Harris is a member of the MSPB, and "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).  On February 10, 2025, Harris received an email stating the President terminated her—without any justification whatsoever.

In these proceedings, Harris has argued that the Board is a constitutional multi-member agency under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935).  But her argument is even stronger:  As Harris explained, the MSPB is "an adjudicating body"—an Article I court—"with all the paraphernalia by which legal claims are put to the test of proof."  *Wiener v. United States*, 357 U.S. 349, 354 (1958).  The President therefore cannot "remove a member" of the Board "merely because he want[s] his own appointees."  *Id*. at 356.

The District Court ruled for Harris and stressed that the Board is a judicial tribunal that "conducts preliminary adjudications of federal employees' claims." JA83.

## B.    Stay Proceedings

On appeal, this case was consolidated with *Wilcox v. Trump*, No. 25-5057 (D.C. Cir.), involving a removed member of the NLRB.  The government sought stays pending appeal, which a panel initially granted, but which the *en banc* court denied.  *See Harris v. Bessent*, No. 25-5037, 2025 WL 980278, at *1 (D.C. Cir. Mar. 28, 2025) (per curiam), *vacated on reconsideration en banc*, 2025 WL 1021435, at *1 (D.C. Cir. Apr. 7, 2025) (en banc) (per curiam).

At oral argument, the government characterized the MSPB as "predominantly an adjudicatory body"—recognizing its status as an Article I court.  Stay Oral Arg. Tr. 12:22-23.  In her dissent—which the *en banc* Court adopted—Judge Millett

4

underscored the MSPB's judicial role: the Board "has no investigatory or prosecutorial role"; the Board "is passive and must wait for appeals to be initiated"; the Board has "limited jurisdiction"; the Board "is charged" with a task of "intrinsic judicial character"; and the Board "has limited rulemaking authority" to adopt internal rules and procedures. *Harris*, 2025 WL 980278, at *30-31 & n.1 (Millett, J., dissenting) (quotation marks and citation omitted).

The government sought stays and certiorari before judgment from the Supreme Court. The Supreme Court granted the stays based on its "judgment that the Government faces greater risk of harm," but denied certiorari before judgment. *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) (per curiam).

### C.    Merits Proceedings

On May 16, 2025, the merits panel heard expedited oral argument.

In September, the government returned to the Supreme Court in *Slaughter*, involving a terminated FTC commissioner. But this time, unlike in *Harris* and *Wilcox*, the removed official acquiesced to certiorari before judgment. In response, Harris filed a petition for certiorari before judgment. *See Harris v. Bessent*, No. 25-312 (U.S.). The Supreme Court granted *Slaughter* but denied certiorari before judgment in this case. Harris then filed an amicus brief in *Slaughter* in support of neither side. She argued that the MSPB is an Article I court and urged the Court—

no matter what it does with the FTC—to preserve Article I courts. *See* Br. for Cathy Harris, *Trump v. Slaughter*, No. 25-332 (U.S.).

On December 5, 2025, the panel ruled for the government. In his decision for the majority, Judge Katsas acknowledged Supreme Court precedent upholding "purely adjudicatory bodies like the War Claims Commission at issue in *Wiener*." Add. 19. But relying on arguments the panel developed *sua sponte*, Judge Katsas concluded that the MSPB was a "policymaking" body that "manages" the federal workforce and "administers" statutes. Add. 11, 35-36.

Judge Pan dissented. She stressed that the Board is a "purely adjudicatory" tribunal that "functions as a court in the specialized realm of employment law." Add. 61 (Pan, J., dissenting).

On December 8, the Supreme Court heard oral argument in *Slaughter*. The government's brief acknowledged the constitutionality of Article I courts. U.S. Br. 23, *Trump v. Slaughter*, No. 25-332 (U.S.). During the argument, multiple Justices differentiated between policymaking independent agencies and Article I courts. *See, e.g.*, Oral Argument Tr. 15:18-16:5, *Trump v. Slaughter*, No. 25-332 (U.S.) (Chief Justice); *id.* 26:5-12 (Justice Alito); *id.* 49:7-15 (Justice Kavanaugh).

The Chief Justice also noted that, where Congress may have entrusted a judicial entity with a miniscule amount of executive function, a court could "sever out the smaller little tail on the dog," without invalidating the judicial body. *Id.*

21:14-17.    Notably, the Solicitor General agreed that such a remedy can be appropriate. *Id.* 21:18.

### D.    The Administration Directs The MSPB How To Rule.

The MSPB has taken on particular importance in light of recent events regarding the civil service.  Since taking office, the Administration has fired hundreds of civil servants, including: prosecutors and support staff assigned to special counsel Jack Smith[1]; January 6 prosecutors[2]; nearly one hundred immigration judges[3]; and federal employees who allegedly were terminated for signing open letters critical of the Administration.[4]

Many such civil servants have filed cases before the MSPB, alleging that the terminations violated landmark civil service statutes and the Constitution.  In response, the government has chiefly argued that civil service laws are unconstitutional.

---

[1] Sarah N. Lynch and Andrew Grodsward, *US Justice Department fires several more employees from Jack Smith's team, sources say*, Reuters (July 14, 2025), https://tinyurl.com/3dhw5xyw/.

[2] Michael Kunzelman, *Prosecutor who handled high-profile Capitol riot cases sues government over his firing*, Associated Press (July 24, 2025), https://tinyurl.com/2f2unvcn.

[3] Emily Ngo, *Immigration courts thrown into chaos as Trump administration purges dozens of judges*, POLITICO (Dec. 6, 2025), https://tinyurl.com/25u86bxy.

[4] Drew Friedman, *Fired EPA employees challenge agency, alleging free speech violations*, Fed. News Network (Dec. 3, 2025), https://tinyurl.com/yk99xzd4.

In August, an MSPB administrative judge rejected the government's argument, holding that, under binding precedent, the MSPB cannot invalidate its own organic statute, and that the government's constitutional theory must be presented in the first instance to the Federal Circuit.  *See Jackler v. Dep't of Just.*, DA-0752-25-0330-I-1 (M.S.P.B.); *Jaroch v. Dep't of Just.*, DA-0752-25-0328-I-1 (M.S.P.B.).

Shortly thereafter, OLC issued a formal opinion directing the Board and its administrative judges to overrule precedent, and find instead that the Board has the authority to declare a statute unconstitutional.  *See The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding*, 49 Op. O.L.C. __ (Sep. 26, 2025) (slip op. at 8-10 & n.5).  The government has subsequently argued that OLC's opinion is "binding upon the Board."  PFR Tab 2 at 6, *Jackler v. Dep't of Justice*, DA-0752-25-0330-I-1 (M.S.P.B.).

In other words, the executive branch is purporting to instruct the MSPB how to decide legal issues while simultaneously appearing as a party before the Board.  This corrupts the statutory scheme by turning the MSPB—which is supposed to serve as a neutral arbiter—into the cat's paw of one of the litigants.  If the members of the MSPB are no longer protected from removal as Congress intended, and the

executive branch dictates how the MSPB decides cases, protections for the civil service are at risk.

Some civil servants have brought suit in federal court to seek a neutral forum, but the government has argued that civil servants must proceed before the MSPB instead. *See, e.g.*, Aaron Katersky, *Judge to review Maurene Comey's wrongful termination case against Trump administration*, ABC News (Dec. 1, 2025), https://tinyurl.com/57neu99d. In short, civil servants—whom Congress intended to protect from abuse and discrimination—are now forced into a process where the government believes itself both party and judge.

## ARGUMENT

### I.    THE MSPB IS AN ARTICLE I COURT.

The panel should grant rehearing. If it does not, the Court should grant *en banc* review. The Merit Systems Protection Board is not a policymaking body— and no one has seriously described it as such, until this case. The MSPB is "a purely adjudicatory agency that functions as an employment-law court." Add. 73 (Pan, J., dissenting). Even the government agrees the MSPB is "predominantly an adjudicatory body." Stay Oral Arg. Tr. 12:22-23. If the Supreme Court is to seriously consider whether this important Article I court is constitutional, the Justices should have before them an accurate picture of what the Board really is.

The majority opinion paints the Board as something it is not.  The panel states that the Board "*manages* disputes between federal employees and their employing agencies"—suggesting the Board is some form of super-manager within the executive branch.  Add. 11 (emphasis added).  That is wrong.  The Board "hear[s]" and "adjudicate[s]" discrete cases brought before it.  5 U.S.C. § 1204(a)(1).  It does not *manage* the federal workforce.  As Judge Millett has explained, the Office of Personnel *Management* is the executive branch's *managerial* arm, subject to direct presidential control.  *See* 5 U.S.C. § 1103(a)(5) (charging Office of Personnel Management with "executing, administering, and enforcing" civil service laws).  By contrast, the MSPB "[is] tasked with adjudicating disputes," and has a modest measure of independence because it is an adjudicator.  *Harris*, 2025 WL 980278, at *30 (Millett, J., dissenting).  Nor does the MSPB "*administer[ ]*" statutes—a word that gives the mistaken impression the Board is a traditional agency that enforces laws.  Add. 35 (emphasis added).  The MSPB hears discrete cases brought before it.

Until this appeal, no one seriously confused the MSPB with a policymaking body.  This contrasts with, for example, the NLRB.  The panel quotes precedents describing the NLRB as "developing and applying national labor policy."  Add. 26 (quoting *NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775, 786 (1990)).  The panel cannot quote similar language regarding MSPB because the MSPB does not develop

policy. *See, e.g.*, *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (describing MSPB as "an independent adjudicator").

To be clear: Harris does not seek to invalidate the for-cause termination statutes for policymaking entities. But the MSPB does not rise and fall with those agencies. The MSPB does not make federal employment policy—any more than the Tax Court makes tax policy. The MSPB is a true Article I court. It applies law to facts in discrete cases.

The majority faults the MSPB for issuing "final decisions." Add. 31 (quotation marks omitted). But that is what all courts do, including Article I courts. It is a hallmark of adjudication. Indeed, the War Claims Commission in *Wiener* issued *conclusive* decisions that could not be challenged *in any forum*. *See* Add. 56 n.11 (Pan, J., dissenting).

The majority worries that the MSPB can order relief. Add. 32-33. Again, that was also true of the War Claims Commission. And, again, awarding relief is part of adjudicating a dispute. Add. 56 n.11 (Pan, J., dissenting).

The majority characterizes the Board as a "jack-of-all-trades"—implying it has sweeping powers, akin to the FTC's regulation of the economy. Add. 32. Not so. The Board has limited jurisdiction in the "specialized realm of employment law." Add. 61 (Pan, J., dissenting).

11

Consider what might be the panel's most egregious error: the notion that the Board makes policy via substantive rules. The government never made that argument before this Court. Because it is wrong.

The majority relied on a single case, *Tunik v. MSPB*, 407 F.3d 1326 (Fed. Cir. 2005), which confirms that the Board is not a policymaking entity. Prior to *Tunik*, the MSPB had issued a decision in a case called *Doyle*. *Id*. at 1333. As courts often do, the Board promptly "reorganize[d] and update[d]" "its rules of practice and procedure" to reflect *Doyle*, "for the benefit of the Board's customers." Practices and Procedures, 63 Fed. Reg. 42685, 42685 (Aug. 11, 1998). In other words, the Board changed its local rules to reflect new precedent—just like this Court might modify its local rules, after a significant judicial decision requiring a change in procedure. This kind of procedural rule is not the stuff of a policymaking entity. It is the hallmark of a judicial body.

The Board subsequently concluded it had erred in *Doyle*, relying on the tools of statutory interpretation and intervening precedent. *Tunik v. Soc. Sec. Admin.*, 93 M.S.P.R. 482 (2003). This kind of reversal happens rarely, and rarely still on partisan lines—itself a sign that the MSPB is not a policymaking entity. But in *Tunik*, the Federal Circuit concluded that the Board was nevertheless bound by its court rules until such time as the MSPB repealed the rules via notice and comment—

despite the Administrative Procedure Act exempting "rules of agency organization, procedure, or practice" from that process.  5 U.S.C. § 553(b)(A).

That the majority cited only one outlier case—which involves internal rules and procedures—proves the point: the Board does not engage in substantive rulemaking.  Indeed, after citing *Tunik*, the majority caveats that "MSPB's rulemaking" "does not rival the broad rulemaking authority of the NLRB, and the contours of its other rulemaking authorities are unclear."  Add. 30-31.  This gives the game away.  The MSPB does not engage in substantive rulemaking like the NLRB, broad or otherwise.  This Court should not rely on a single needle in a haystack to cripple this important tribunal.

We could go on.  The panel *sua sponte* proffered an argument for why the MSPB can withhold the salaries of executive branch officials.  Add. 33.  But the Board cannot.  *See* Amicus Br. of Former Board Members and General Counsel 9.  The panel noted that, in rare circumstances, the MSPB is the respondent in litigation.  Add. 34.  But as our merits brief explained, this is a statutory device to permit the Board's expert attorneys to provide specialized knowledge to courts.  It bears no relationship to litigation brought by executive branch agencies (and is easily severable to boot).  Appellee Br. 40.

The panel concluded that the Board's (highly deferential) review of the reasonableness of an agency's penalty imposed on an employee under *Douglas v.*

13

*Veterans Admin.*, 5 M.S.P.R. 280 (1981), is freewheeling policymaking. Add. 32. Not so. In *Douglas*, the Board stressed it is *not* "free simply to substitute its judgment for that of the employing agencies. *Management of the federal work force and maintenance of discipline among its members is not the Board's function*." *Id.* at 300 (emphasis added). Instead, in adjudicating a case, MSPB narrowly analyzes whether "the agency's penalty is within the range allowed by law," whether it "was based on a consideration of the relevant factors," and whether "there has not been a clear error of judgment." *Id.* at 301 (cleaned up).

Finally, the panel erred on remedy—which alone warrants *en banc* review. If there was some vestigial authority that tipped the balance, the proper remedy was not to blow up the agency's structure, but instead to invalidate that power and keep this quintessential judicial body intact. That is the remedy the Supreme Court adopted in *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021). There, a party had challenged removal protections for administrative patent judges. The Supreme Court adopted "a tailored approach" that preserved the removal statute, but invalidated other portions of the statutory scheme. *Id.* at 25.

The same remedy would be appropriate here: To the extent the panel truly believed some minuscule facet of the MSPB's design made the Board insufficiently "judicial," the response is to invalidate that limited power—not invalidate a tribunal central to the entire civil service system. Indeed, the Chief Justice noted the

possibility of this type of remedy at oral argument in *Slaughter*, and the Solicitor General agreed it could be appropriate. *See Slaughter* Tr. 21:14-21.

That "tailored" remedy best comports with the principles of judicial modesty because it effectuates Congress's intent in creating an independent adjudicatory body to hear civil service cases. *Arthrex*, 594 U.S. at 25. There is simply no reason to believe that Congress would have wanted to neuter the Board's independence—which was a cornerstone of the modern civil service. In contrast, it would be a massive judicial power grab to remove officials the Senate confirmed and to hand the Board's functions to the President based on hairsplitting technicalities.

Tellingly, the panel never mentions *Arthrex*, nor engages in any meaningful analysis on remedy. In a brief paragraph, the panel states that courts "*typically*" "disregard[ ] the removal restriction"—admitting that courts can and do choose other remedies. Add. 35 (emphasis added). The panel then asserts that it will not "blue-pencil provisions from among *the full panoply* of the executive powers of each agency." Add. 36 (emphasis added).

That is a strawman. The MSPB does not exercise a "full panoply of" "executive powers," requiring the court to "blue-pencil" an entire statutory scheme. Whatever might be said of the FTC or another agency, when it comes to the MSPB, the Court is not being asked to revise a massive agency structure with vast executive functions. Instead, the government and the majority can point only to a handful of

inconsequential provisions—none of which are central to the function of this judicial tribunal—because this Article I court is *not* a policymaking body. To the extent any of those provisions tip the balance, the solution is to prevent Appellee from exercising those powers, not to remove her altogether.

## II. THE EN BANC COURT SHOULD ORDER EXPEDITED EN BANC REVIEW.

It is important for the full Court to review this case, not only to respect Congress' decision to provide an independent adjudicatory process for federal employees, but also to provide guidance to the U.S. Supreme Court. The government's strategy has been to lump the MSPB with agencies like the FTC and NRLB, and hope no one notices. The full Court should not permit the panel majority to speak for it on such a delicate issue and undermine Congress' handiwork. Instead, the *en banc* Court should make clear for the Supreme Court what the MSPB is: a true adjudicatory body that performs judicial tasks.

Delaying consideration of these issues to await the Supreme Court's decision in *Slaughter* would severely harm the civil service system, which Congress established. There are many independent agencies whose officials have been removed, and each touches on important aspects of our society. But the MSPB's independence has taken on a unique salience in light of recent events. This tribunal sits at the epicenter of the government's ongoing efforts regarding the professional, non-partisan civil service—which is a bedrock of our federal government.

In *Slaughter*, the Solicitor General downplayed the consequences if "the MSPB"—along with the FTC and NLRB—is "made subject to the political process." *Slaughter* Tr. 34:19-20.  But make no mistake:  An MSPB under the thumb of the White House would spell the death knell for the civil service.  In the last few months, the Administration has fired hundreds of civil servants in facial violation of the civil service laws.  More recently, the Administration took steps toward neutering the MSPB when it directed the Board how to rule on legal issues in specific cases to which the government is a party.  Meanwhile, the government has resisted civil servants' attempts to proceed to neutral Article III courts—channeling them into a forum in which the government now believes it is its own judge.  The government's strategy seems to be to break the system first—and hope the courts will not ask questions fast enough to catch up.

The Supreme Court will likely not issue its decision in *Slaughter* for some months.  If this Court holds this petition pending *Slaughter*, the Court could not hear the case *en banc* until it returns from its summer recess—at which point this case may need to proceed again to the Supreme Court.  This matter cannot wait. Time is of the essence.  The Court should expedite its consideration of its Petition and grant *en banc* review.

17

## CONCLUSION

For the forgoing reasons, this Court should expedite the consideration of this Petition. The panel should grant rehearing.  Barring that, the Court should grant rehearing *en banc*.

December 12, 2025                    Respectfully submitted,

MICHAEL J. KATOR                    /s/ Neal Kumar Katyal
JEREMY D. WRIGHT                    NEAL KUMAR KATYAL
KERRIE D. RIGGS                       *Counsel of Record*
KATOR, PARKS, WEISER & WRIGHT,      MILBANK LLP
   P.L.L.C.                         1101 New York Ave. NW
1150 Connecticut Ave. NW            Washington, DC 20005
Suite 705                           (202) 835-7505
Washington, DC 20036                nkatyal@milbank.com
(202) 898-4800
mkator@katorparks.com               NATHANIEL A.G. ZELINSKY
                                    SAMANTHA BATEMAN
LINDA M. CORREIA                    MARY L. DOHRMANN†
CORREIA & PUTH, PLLC               KYLE R. FREENY
1400 16th St. NW                    JAMES I. PEARCE††
Suite 450                           WASHINGTON LITIGATION
Washington, DC 20036                  GROUP
(202) 602-6500                      1717 K St. NW
lcorreia@correiaputh.com            Suite 1120
                                    Washington, DC 20006
                                    (202) 521-8750
                                    nzelinsky@washington
                                    litigationgroup.org


*Counsel for Plaintiff-Appellee Cathy A. Harris*

*† admitted only in New York; practicing under the supervision of D.C. Bar members*
*†† admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar member*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 40(d)(3), I certify that Appellee's *en banc* petition contains 3,898 words.  This Brief also complies with the requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared using Microsoft Word in 14-point Times New Roman, a proportionally spaced font.

December 12, 2025            /s/ Neal Kumar Katyal
                            NEAL KUMAR KATYAL
                                *Counsel of Record*
                            MILBANK LLP
                            1101 New York Ave. NW
                            Washington, DC 20005
                            (202) 835-7505
                            nkatyal@milbank.com

                            *Counsel for Plaintiff-Appellee*
                            *Cathy A. Harris*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 12, 2025, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. All counsel in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

December 12, 2025
                    /s/ Neal Kumar Katyal
                    NEAL KUMAR KATYAL
                        *Counsel of Record*
                    MILBANK LLP
                    1101 New York Ave. NW
                    Washington, DC 20005
                    (202) 835-7505
                    nkatyal@milbank.com

                    *Counsel for Plaintiff-Appellee*
                    *Cathy A. Harris*